# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KAREN DAVIDSON, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-17-1067 |
| SARNOVA, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Karen Davidson ("Plaintiff") filed suit against Sarnova, Inc. ("Defendant"), her former employer, alleging, *inter alia*, that Defendant discriminated against her on the basis of disability and retaliated against her for seeking an accommodation for her disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-1001 *et seq.* Now pending before the Court is Defendant's Motion to Dismiss Post-Discharge Retaliation Claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) The issues have been briefed (ECF Nos. 14, 16, & 21), and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Defendant's motion will be construed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and will be GRANTED.

## I. Background[1]

On June 16, 2015, Plaintiff filed an administrative complaint against Defendant with the District of Columbia Office of Human Rights ("DCOHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of disability and retaliation. After both agencies declined to bring an enforcement action against Defendant, Plaintiff received a right-to-sue letter from the EEOC. Plaintiff originally filed suit against Defendant in Maryland state court, however, Defendant subsequently removed the action to this Court. (ECF No. 1.)

On August 11, 2014, Plaintiff was hired as an account manager by Defendant, a healthcare products distributor. Beginning in October 2014 and continuing through January 2015, Plaintiff had a series of conversations with her managers and human resources officials, informing them that she was disabled and requesting an accommodation for her disability. More specifically, she informed Defendant that she suffered from Post-Traumatic Stress Disorder and requested that she be allowed to work in a different group under a manager she considered to be "nonconfrontational, respectful and . . . laid back." (1st Am. Compl. ¶ 30.) Plaintiff contends that her managers rebuffed her requests, refusing to grant the accommodation she sought or otherwise modify the conditions of her employment.

On February 3, 2015, Defendant terminated her employment. Plaintiff alleges that she was discharged due to her disability and in retaliation for engaging in protected activity, namely, seeking an accommodation for her disability. Moreover, in her First Amended Complaint, the

---

[1] Considering that this Memorandum evaluates a Rule 12 motion to dismiss, the Court here summarizes the allegations as presented by Plaintiff in her complaint. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Where indicated, the Court supplements these allegations with evidence from outside the pleadings, as is permitted when assessing a factual challenge to jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

operative complaint for this motion, Plaintiff contends for the first time that Defendant continued to retaliate against her *after she was discharged*.

## II. Standard of Dismissal for Lack of Subject–Matter Jurisdiction

Defendant moved to dismiss Plaintiff's post-discharge retaliation claims pursuant to Federal Rule of Civil Procedure 12(b)(6); however, Rule 12(b)(1) is the appropriate vehicle for dismissal of these claims. A plaintiff's failure to exhaust administrative remedies for a Title VII or ADA claim deprives federal courts of subject-matter jurisdiction over the claim. *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) ("[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."); *see Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012) ("[T]he ADA incorporates [Title VII's] enforcement procedures, including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." (citations omitted)).

Because Defendant's motion implicates the Court's subject-matter jurisdiction, the Court may consider evidence outside the pleadings—namely, the DCOHR/EEOC charge—without converting the motion to dismiss into one for summary judgment. *See, e.g.*, *In re KBR, Inc.*, 744 F.3d 326, 333 (4th Cir. 2014) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)). More specifically, Defendant's motion constitutes a factual challenge to the Court's subject-matter jurisdiction: that is, Defendant contends that Plaintiff's jurisdictional basis is undercut by facts not included in the First Amended Complaint. *See, e.g.*, *Finlay v. Fortis Inst.*,

3

No. JKB-15-1184, 2015 WL 5920905, at * 2 (D. Md. Oct. 8, 2015). In a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).[2] Therefore, the Court will examine the scope of Plaintiff's administrative charge without converting the motion to dismiss into one for summary judgment.

*III. Analysis*

Plaintiff brings two retaliation claims, one under the ADA, 42 U.S.C. § 12203(a), and the other under the FEPA, Md. Code Ann., State Gov't § 20-606(f). In support of her ADA claim, Plaintiff alleges that Defendant retaliated against her both before and after she was terminated. With regard to her FEPA claim, Plaintiff relies solely on alleged *post-discharge* conduct by Defendant. Defendant contends that all of Plaintiff's claims that rely on allegations of *post-discharge* conduct must be dismissed because she failed to administratively exhaust these claims before the EEOC and DCOHR, as required by statute. In other words, Defendant requests that the Court dismiss the FEPA claim in its entirety and the ADA retaliation claim only in part. For the reasons explained below, the Court lacks jurisdiction over Plaintiff's post-discharge retaliation claims, and therefore Defendant's motion will be granted.

---

[2] Indeed, courts in this district have consistently found that even under the strict demands imposed by Rule 12(b)(6), an EEOC charge not attached to a complaint may be considered without converting the motion into one for summary judgment. *See, e.g.*, *White v. Mortg. Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (considering EEOC charge attached to defendant's motion to dismiss without converting motion to one for summary judgment because it was integral to and referenced in Plaintiff's complaint); *see also Hepburn v. Nat'l Ctr. on Institutions & Alternatives, Inc.*, 409 F. Supp. 2d 639, 642 (D. Md. 2006) (noting that, in deciding Rule 12(b)(6) motion, court may "consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action"), *aff'd sub nom. Hepburn ex rel. Hepburn v. Nat'l Ctr. on Institutions & Alternatives, Inc.*, 220 F. App'x 216 (4th Cir. 2007). Here, the EEOC charge and right-to-sue letter are referred to in Plaintiff's First Amended Complaint (1st Am. Compl. ¶¶ 9–12), and relied on by Plaintiff to establish this Court's jurisdiction. Thus, even under Rule 12(b)(6), the EEOC charge could be considered without converting Sarnova's motion to dismiss into one for summary judgment.

The ADA prohibits discrimination against any individual (whether disabled or not) who "has opposed any act or practice" forbidden by the statute, 42 U.S.C. § 12203(a)—i.e., it prohibits an employer from retaliating against an employee for engaging in "protected activity" under the ADA. *See Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 & n.3 (4th Cir. 2001) (ADA prohibits retaliatory discharge for engaging in protected activity, which includes requesting reasonable accommodation). Likewise, the FEPA prohibits an employer from discriminating or retaliating against an employee "because the individual has opposed any practice prohibited by this subtitle." Md. Code Ann., State Gov't § 20-606(f)(1) (formatting altered). Both statutes provide for administrative and civil enforcement. 42 U.S.C. § 12117; Md. Code Ann., State Gov't §§ 20-1001–1017. And, most important to the present dispute, both statutes require that a Plaintiff exhaust the administrative remedies available to her before filing a civil suit. 42 U.S.C. § 12117 (expressly incorporating Title VII's enforcement provisions); 42 U.S.C. § 2000e-5(b), (f)(1) (Title VII enforcement provisions requiring administrative exhaustion prior to civil action); Md. Code Ann., State Gov't § 20-1013; *see also, e.g.*, *Sydnor*, 681 F.3d at 593 (holding that ADA requires administrative exhaustion prior to filing civil suit); *Cuffee v. Verizon Commc'ns, Inc.*, 755 F. Supp. 2d 672, 678 (D. Md. 2010) (holding that FEPA requires administrative exhaustion prior to filing civil suit). In short, "[a]n individual cannot bring suit until he has exhausted the administrative process." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

Importantly, when a plaintiff files an administrative claim as required, "[t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996)). When subsequent civil claims exceed the scope of the

administrative charge, they are procedurally barred because "federal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Balas*, 711 F.3d at 406. While an administrative claim "defines the scope" of the plaintiff's later civil suit, that suit is not "strictly limit[ed]" to the exact language and allegations of the original administrative charge. *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)). "[R]ather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* (quoting *Chisholm*, 665 F.2d at 491). Thus, federal jurisdiction extends to only those claims that are: (1) "stated in the initial charge"; (2) "reasonably related to the original complaint"; or (3) "developed by reasonable investigation of the original complaint." *Chacko*, 429 F.3d at 506 (quoting *Evans*, 80 F.3d at 963). In conducting this analysis, courts construe administrative claims liberally because they are often completed without the assistance of legal counsel. *Id.* at 509.

Despite the liberal construction afforded to Plaintiff's administrative charge, the Court concludes that she failed to exhaust her administrative remedies as to her post-discharge retaliation claims. Plaintiff's DCOHR complaint, under the heading "Discharge-Retaliation," states that,

> [o]n or about February 3, 2015, I received an email from the Regional Manager with an attachment that contained [Defendant's] notice of my employment termination. The reasons for my employment termination were unsatisfactory work performance and insubordination. I contend [Defendant's] reasons for my employment termination are related to my informing the Regional Manager of my disabilities and my two requests for a reasonable accommodation.

(Def.'s Mot. to Dismiss Ex. 1.) In short, Plaintiff alleged that she was terminated in retaliation for seeking a reasonable accommodation. By contrast, the First Amended Complaint sets forth a slew of allegations regarding post-discharge retaliatory conduct by Defendant, including:

6

a. Informing potential employers and businesses that Plaintiff is and has committed fraud, has committed wrongs, and was other than a competent employee;

b. Issuing a no-contact order with threats to employees and informing salespeople that Plaintiff is and has committed a fraud, has committed wrongs, and was other than a competent employee with the intent and knowledge that those salespeople will inform others in the industry[;]

c. Making statements to administrative agencies, including the D.C. Office of Human Rights and unemployment offices that Plaintiff is a fraud and has committed fraud.

(1st Am. Compl. ¶ 51.)

Plaintiff's new allegations are not reasonably related to her narrow retaliation claim made in the original administrative charge. The administrative charge identified an isolated incident—Plaintiff's termination—as the sole retaliatory conduct taken by Defendant. Plaintiff's complaint, however, bears little resemblance to this straightforward charge. Rather, the First Amended Complaint alleges that Defendant engaged in a pattern of retaliatory conduct, spread over a period of time following her discharge, and involving multiple other parties not referenced in the original administrative charge. Moreover, considering that Plaintiff's administrative charge identified an isolated incident on a *specific date*, her post-termination allegations of *future conduct* were not likely to be "developed by reasonable investigation of the original complaint." *Chacko*, 429 F.3d at 506 ("[W]e have held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." (citing *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 153, 156–57 (4th Cir. 1995)); *see also id.* ("[A] plaintiff fails to exhaust administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit.").

Plaintiff puts forth two arguments in an attempt to salvage her retaliation claims. First, she contends that the DCOHR actually investigated Defendant's post-discharge retaliatory conduct. Second, she suggests that retaliation claims need not be administratively exhausted. Both arguments are meritless. The only evidence she offers in support of her first contention is an interview the DCOHR conducted with Jim McGannon, a Sarnova human resources official, in which Mr. McGannon stated his belief that Plaintiff had committed fraud by continuing to receive unemployment benefits while she was employed by Defendant.[3] However, the mere fact that Mr. McGannon made statements to DCOHR regarding Plaintiff's alleged prior and unrelated fraud, does not mean that those statements were part of the agency's *investigation* of Plaintiff's retaliation claim. The DCOHR's final report confirms as much: it does not mention the fraud allegations at all in its analysis of the retaliation claim. Indeed, the fact that Defendant presented the prior fraud finding to the DCOHR in the course of its investigation, and neither Plaintiff nor the agency ever raised the possibility that Defendant did so with a retaliatory motive, strongly suggests that this post-discharge conduct was not reasonably related to the allegations in the original charge.

Relying on *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992), Plaintiff next suggests that retaliation claims fall under a blanket exception to the ADA's administrative exhaustion requirement. In *Nealon*, the Fourth Circuit recognized a narrow exception to the general administrative exhaustion requirement for Title VII retaliation claims. Where a Plaintiff has *previously filed an administrative charge* of discrimination, she may raise a retaliation claim *based on that administrative charge* for the first time in federal court. *Nealon*, 958 F.2d at 590. In other words, where the purported retaliation is in response to an administrative complaint

---

[3] Plaintiff offers no evidence to support the notion that the DCOHR investigated her other allegations of post-discharge retaliatory conduct—i.e., making disparaging comments about Plaintiff to industry third-parties and issuing a "no-contact" order to its other employees.

8

itself, a Plaintiff need not file a second administrative complaint. *Id.*; *see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (noting that exception recognized in *Nealon* reflected "practical concerns" that a plaintiff "will naturally be reluctant to file a separate charge" when she "has already been retaliated against one time for filing an EEOC charge"). *Nealon* is inapposite here. The First Amended Complaint does not allege that Defendant retaliated against Plaintiff for filing an administrative charge. Nor does Plaintiff suggest as much in her opposition to Defendant's motion. Rather, Plaintiff alleges only that Defendant retaliated against her for seeking an accommodation while she was still employed.

## IV. Conclusion

For the foregoing reasons, an Order shall enter GRANTING Defendant's Motion to Dismiss Post-Discharge Retaliation Claims (ECF No. 14).

DATED this 18th day of August, 2017.

BY THE COURT:

/s/
James K. Bredar
United States District Judge